UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                          :

UNITED STATES OF AMERICA

                          :

           - v. -

                          :

BRIAN BLOCK,

                          :

          Defendant.

------------------------------------x

**SEALED INDICTMENT**

16 Cr. __

**16 CRIM 595**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 07 2016
ORIGINAL

## COUNT ONE
**(Conspiracy to Commit Securities Fraud, To Make False Filings
with the SEC, and to Falsify Books and Records)**

     The Grand Jury charges:

### Relevant Persons and Entities

     1.    At all times relevant to this Indictment, American
Realty Capital Properties, Inc. ("ARCP") was a publicly-traded
real estate investment trust ("REIT") headquartered in
Manhattan, New York.  ARCP's securities traded under the symbol
"ARCP" on the National Association of Securities Dealers
Automated Quotations ("NASDAQ") exchange.  At all times relevant
to this Indictment, ARCP had a Board of Directors, which
included an audit committee comprised of certain board members
who were not ARCP employees (the "Audit Committee").

     2.    At all times relevant to this Indictment, BRIAN BLOCK,
the defendant, held the position of Chief Financial Officer
("CFO") of ARCP.  At all times relevant to this Indictment,

**JUDGE OETKEN**

BLOCK signed ARCP's quarterly and yearly financial reports that were required to be filed with the SEC.

3.     At all times relevant to this Indictment, Lisa McAlister ("McAlister"), a co-conspirator not named as a defendant herein, held the position of Chief Accounting Officer ("CAO") of ARCP.  At certain times relevant to this Indictment, McAlister signed ARCP's quarterly and yearly financial reports, on Forms 10-Q and 10-K, respectively, that were required to be filed with the United States Securities and Exchange Commission ("SEC").

4.     At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1") held the position of Director of Financial Reporting at ARCP.  CC-1 was responsible for, among other things, the external reporting of ARCP's financial results, including coordinating the drafting and filing of ARCP's required quarterly, annual and other filings with the SEC.

### ARCP's Use of AFFO to Assess Performance

5.     Because ARCP, like many REITs, generated profit and shareholder returns based on the performance of underlying real estate assets, at all times relevant to this Indictment, ARCP measured its performance through metrics besides, or in addition to, traditional measurements of company performance calculated

using Generally Accepted Accounting Principles ("GAAP") such as earnings per share.

6.    For example, ARCP, like many REITs, measured its performance through a non-GAAP measurement known as funds from operations ("FFO"), which measures net income, excluding gains or losses from sales of property, but including its real estate depreciation expense.  While REITs such as ARCP are not required by GAAP to calculate their FFO, ARCP nonetheless reported its FFO calculation in its required periodic filings with the SEC, as did other REITS.

7.    ARCP also measured its financial performance through a non-GAAP measurement known as adjusted funds from operation, or "AFFO," which it also reported in its required periodic filings with the SEC.  ARCP calculated its AFFO by applying various adjustments to ARCP's FFO figure in order to exclude certain one-time charges, such as expenses associated with mergers or acquisitions or expenses associated with the extinguishment of debt.

8.    ARCP also released to the investing public forward-looking forecasts of its expected AFFO and AFFO per share for future time periods, known as guidance.

9.    Along with certain other ARCP executives, compensation for BRIAN BLOCK, the defendant, was tied in part to whether ARCP hit certain AFFO targets.  With regard to BLOCK in particular,

as set forth in a proxy statement filed by ARCP, his
compensation package provided for a base salary of $500,000 and
possible incentive compensation of a "threshold," "target," or
"maximum" equity bonus of 250%, 350%, or 450% respectively of
base salary, in addition to possible cash bonuses.  One of the
express performance criteria to be utilized to determine BLOCK's
incentive compensation was whether ARCP met AFFO per share
triggering goal levels of $1.06 per share ("threshold"), $1.13
per share ("target"), or $1.16 per share ("maximum") for the
year.

### The Accounting Fraud Scheme

10.  From at least in or about July 2014 through in or
about August 2014, BRIAN BLOCK, the defendant, McAlister, CC-1,
and others known and unknown, participated in an accounting
fraud scheme in which they caused ARCP to report, in public
filings with the SEC and to the investing public, falsely
inflated AFFO and AFFO per share, key metrics used to evaluate
ARCP's financial performance, for the second quarter of 2014
("Q2 2014") and the first six months of 2014 ("year to date
2014" or "YTD 2014").  BLOCK and others caused ARCP to falsely
inflate these figures in order to ensure that they were
consistent with ARCP's publicly announced guidance for AFFO and
to conceal accounting errors made in calculating these metrics
for the first quarter of 2014.

- 4 -

**The Gross and Net Methodologies to Calculate AFFO
and AFFO Per Share**

11.   ARCP, like many other REITs, did not directly own its
underlying portfolio of real estate assets.   Instead, the assets
were owned by an operating partnership (the "Operating
Partnership"), with ARCP owning approximately 97% of the common
stock of the Operating Partnership.   The remaining approximately
3% of the Operating Partnership's stock was owned by certain
outside shareholders, which held non-controlling interests in
the Operating Partnership (together, "non-controlling
interests," or "NCI").

12.   At all times relevant to this Indictment, there were
two permissible methods of calculating FFO, AFFO, and AFFO per
share available to ARCP.   The first method, referred to herein
as the "gross method," takes into account all income, expenses,
and other financial statement items for the entire Operating
Partnership; that is, the gross method accounts for all such
financial figures for both the publicly-traded REIT and the
affiliated non-controlling interests.   When calculating AFFO per
share using the gross method, AFFO is divided by the total
number of fully-diluted shares outstanding, including those of
the non-controlling interests.   The second method, referred to
herein as the "net method," focuses only on the publicly-traded
REIT, and deducts from any calculations financial figures

- 5 -

affiliated with the non-controlling interests. When calculating AFFO per share using the net method, the AFFO is divided by only the fully-diluted shares outstanding affiliated with the publicly-traded REIT and not those of the non-controlling interests. When calculated properly, AFFO per share under either the gross method or the net method for a given entity should be the same. However, an erroneous combination of the gross and net methods can result in an incorrect and possibly inflated calculation of AFFO per share.

### ARCP's AFFO and AFFO Per Share Guidance for 2014

13. On or about October 23, 2013, in conjunction with ARCP's filing of materials relating to its merger with Cole Capital, ARCP filed a Form 8-K with the SEC, as well as a press release that, among other things, set forth ARCP's guidance on AFFO per share for calendar year 2014. The press release announced that ARCP had "updated 2014 AFFO pro forma guidance of $1.13 to $1.19 per share." Also attached to the Form 8-K was an ARCP investor presentation that provided the same AFFO guidance range.

14. On or about February 27, 2014, in conjunction with the filing of ARCP's year-end financials for 2013, ARCP filed a Form 8-K with the SEC. Attached to this Form 8-K was an ARCP press release that, among other things, "reiterated" AFFO guidance for 2014 of $1.13 to $1.19 per share.

## Preparation and Filing of Q2 2014 10-Q

15. In the months and weeks leading up to the July 29, 2014 filing of the Form 10-Q with the SEC setting forth ARCP's financial statements for the second quarter of 2014 (the "Second Quarter 10-Q"), BRIAN BLOCK, the defendant, along with McAlister, CC-1 and others, came to understand that the method used by ARCP to calculate AFFO in the first quarter of 2014 and in certain previous quarters was erroneous in that it incorrectly used a combination of the gross method and the net method when calculating its AFFO and AFFO per share for these quarters. CC-1 had brought this methodological error to the attention of BLOCK, McAlister and others shortly before the filing of ARCP's first quarter 2014 10-Q (the "First Quarter 10-Q"), but no corrective change was made to the First Quarter 10-Q while the issue was under review. Following the filing of the First Quarter 10-Q, CC-1 concluded, and advised BLOCK, McAlister and others, that the reported AFFO per share calculation for the first quarter of 2014 was overstated by approximately $0.03 per share. Instead of $0.26 per share, which was publicly reported by ARCP to its shareholders and the investing public, and which placed ARCP on track to meet its full-year AFFO per share guidance, the correct calculation of AFFO per share should have been $0.23 per share.

16.  Despite his knowledge of a material error in ARCP's previous filings with the SEC, BRIAN BLOCK, the defendant, took no steps to advise the Audit Committee or ARCP's outside auditor (the "Auditor") of the error in the First Quarter 10-Q. Moreover, BLOCK, McAlister, and CC-1 then knowingly facilitated the use of the same materially misleading calculations in ARCP's Second Quarter 10-Q.

17.  For example, on or about July 24, 2014, a draft of ARCP's Second Quarter 10-Q was circulated to members of the Audit Committee in advance of a conference call scheduled for the next day.  Among others, BRIAN BLOCK, the defendant, McAlister and CC-1 were copied on the email.  The attached draft Second Quarter 10-Q included, on a net basis, an AFFO calculation for the second quarter of 2014 of $198.596 million. It also included AFFO for the six-month period ending June 30, 2014 ("YTD 2014") of $346.376 million.  Incorporated into this six-month figure was the AFFO figure from the first quarter of 2014 that BLOCK, McAlister and CC-1 knew to be falsely inflated.

18.  In addition, on or about July 28, 2014, the day before ARCP was to file its Second Quarter 10-Q, CC-1 caused to be sent to McAlister and several employees of the Auditor, a "blackline" of ARCP's draft Second Quarter 10-Q, which showed changes from a previously circulated version, as well as the current draft of the Second Quarter 10-Q.  McAlister then forwarded the draft

- 8 -

Second Quarter 10-Q to BRIAN BLOCK, the defendant, and others.
Like the draft Second Quarter 10-Q sent to the Audit Committee
on July 24, 2014, the draft sent to the Auditor included an AFFO
calculation for YTD 2014 that was improperly inflated, as BLOCK
well knew, because it was based in part on the erroneous,
inflated AFFO figure for the first quarter of 2014.

19.   On or about July 28, 2014, BRIAN BLOCK, the defendant,
and others decided to switch the AFFO calculation presented in
the Second Quarter 10-Q from the net method that had been
utilized (incorrectly) in the 10-Q for the previous quarter to
the gross method.  That evening, BLOCK met with McAlister and
CC-1 in his office at ARCP in Manhattan, New York, for the
purpose of finalizing the numbers that were to be included in
the Second Quarter 10-Q.  Utilizing a correct calculation under
the gross method would have exposed that the reported AFFO and
AFFO per share figures from the first quarter were inflated.
Accordingly, during that meeting, BLOCK, McAlister, and CC-1
inserted into a spreadsheet BLOCK was using to calculate AFFO
and AFFO per share for the first and second quarters of 2014 and
for YTD 2014, without any justification, figures that
fraudulently inflated the AFFO and AFFO per share calculations
that were to be included in the Second Quarter 10-Q and the
related press release, both of which were to be publicly filed
with the SEC the following day.  The fraudulent numbers BLOCK,

- 9 -

McAlister, and CC-1 used to inflate the AFFO and AFFO per share figures had no basis in fact, were without documentary support, and did not tie to ARCP's general ledger accounting system, as BLOCK knew and understood at the time.

20.    After inserting these fraudulent numbers, BRIAN BLOCK, the defendant, emailed McAlister and CC-1 a spreadsheet entitled "Q2 2014 AFFO recast" (the "Recast Spreadsheet").   The Recast Spreadsheet set forth the fraudulently inflated AFFO and AFFO per share calculations for both the first and second quarters of 2014 and for YTD 2014 that BLOCK, McAlister, and CC-1 had just inserted.   CC-1 then used the Recast Spreadsheet to input materially false figures into the AFFO table in the Second Quarter 10-Q that was to be filed with the SEC the following day.

21.    On or about July 29, 2014, CC-1 caused the revised Second Quarter 10-Q, including the falsely inflated AFFO calculations for the second quarter of 2014 and YTD 2014, to be sent to the Auditor.   Although McAlister was in communication with the Auditor about the revised filing, as BRIAN BLOCK, the defendant, was aware, McAlister intentionally did not advise the Auditor of the fraudulent inflation of the AFFO and AFFO per share metrics.   The Auditor therefore approved the filing of the Second Quarter 10-Q without appreciating that it contained fraudulently inflated financial figures.

- 10 -

22.   On or about July 29, 2014, ARCP filed the Second
Quarter 10-Q with the SEC.   The Second Quarter 10-Q included the
fraudulently inflated AFFO figures prepared the previous evening
by BRIAN BLOCK, the defendant, McAlister, and CC-1.
Specifically, the Second Quarter 10-Q included, on a gross
basis, a fraudulently inflated AFFO for the second quarter of
2014 of $205.278 million and a fraudulently inflated AFFO for
the first six months of 2014 of $353.058 million, which included
the fraudulently inflated AFFO figure for the first quarter of
2014 that was included in the Recast Spreadsheet.

23.   The Second Quarter 10-Q was signed by, among others,
BRIAN BLOCK, the defendant, and McAlister.   Additionally, ARCP
filed with the Second Quarter 10-Q a certification entitled
"Certification Pursuant To Rule 13a-14(a) And 15d-14(a) Under
The Securities Exchange Act Of 1934, As Amended," in which BLOCK
certified, in part:

1.   I have reviewed this Quarterly Report on Form 10-Q of
American Realty Capital Properties Inc.;

2.   Based on my knowledge, this report does not contain any
untrue statement of a material fact or omit to state a
material fact necessary to make the statements made, in
light of the circumstances under which such statements were
made, not misleading with respect to the period covered by
this report;

3.   Based on my knowledge, the financial statements, and
other financial information included in this report, fairly
present in all material respects the financial condition,
results of operations and cash flows of the registrant as
of, and for, the periods presented in this report; . . .

In this certification, BLOCK also certified that he had

disclosed to ARCP's auditor and the audit committee of its board

of directors: "Any fraud, whether or not material, that

involves management or other employees who have a significant

role in the registrant's internal control over financial

reporting." ARCP also filed with the Second Quarter 10-Q a

second certification entitled "Section 1350 Certifications," in

which BLOCK further certified, in part:

> The quarterly report on Form 10-Q of the Company, which
> accompanies this Certificate, fully complies with the
> requirements of Section 13(a) or 15(d) of the Securities
> Exchange Act of 1934, and all information contained in this
> quarterly report fairly presents, in all material respects,
> the financial condition and results of operations of the
> Company.

24. On the same date that the Second Quarter 10-Q was

filed, ARCP filed a Form 8-K with the SEC, which attached an

ARCP-issued press release (the "Second Quarter Press Release")

as an exhibit. The Second Quarter Press Release was headlined:

"American Realty Capital Properties Announces Second Quarter

2014 Operating Results." The Second Quarter Press Release

touted: "Generated Revenues of $382.0 Million and AFFO per

share of $0.24 up 595.2% and 26% Respectively from Prior Year

Period." Among the "operating highlights" for the quarter was

an item that similarly stated: "Increased AFFO to $205.3

million, up 429.0% compared to the same period a year earlier,

and increased AFFO per share to $0.24, up 26% compared to the same period a year earlier."

25.   With regard to YTD 2014 specifically, the fraud resulted in an intended overstatement of AFFO by approximately $13 million and an overstatement of AFFO per share by approximately $0.03, or approximately 5% of total AFFO per share.   By reporting AFFO per share of $0.24 in the second quarter, after having reported AFFO per share of $0.26 in the first quarter, BRIAN BLOCK, the defendant, McAlister, and CC-1 misled ARCP's shareholders and the investing public by falsely representing that ARCP's AFFO per share for the first six months of 2014 was consistent with analysts' expectations and on track to meet the full-year guidance for AFFO per share of $1.13 to $1.19 that the company had announced on October 23, 2013 and subsequently reiterated.

## Statutory Allegation

## The Conspiracy

26.   From at least in or about July 2014 through in or about August 2014, in the Southern District of New York and elsewhere, BRIAN BLOCK, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, to commit securities fraud in connection with the purchase and sale of securities

- 13 -

issued by ARCP, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; to make and cause to be made false and misleading statements of material fact in applications, reports and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, in violation of Title 15, United States Code, Sections 78m(a) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-11, and 240.13a-13; and to falsify the books and records of ARCP, in violation of Title 15, United States Code, Sections 78m(b)(2) and (5), and 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-1.

## Objects of the Conspiracy

27.  It was a part and an object of the conspiracy that BRIAN BLOCK, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, would and did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) engaging in acts,

- 14 -

practices, and courses of business which operated and would operate as a fraud and deceit upon persons; and (c) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Title 15, United States Code, Sections 78j(b) & 78ff.

28. It was a further part and an object of the conspiracy that BRIAN BLOCK, the defendant, and others known and unknown, willfully and knowingly would and did make and cause to be made statements in reports and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, in violation of Title 15, United States Code, Sections 78m(a) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-11, and 240.13a-13.

29. It was a further part and an object of the conspiracy that BRIAN BLOCK, the defendant, and others known and unknown, willfully and knowingly would and did, directly and indirectly, falsify and cause to be falsified certain books, records, and accounts subject to Section 13(b)(2) of the Securities Exchange Act of 1934, namely books, records, and accounts of ARCP, an issuer with a class of securities registered pursuant to the

Securities Exchange Act of 1934, which ARCP was required to make and keep, accurately and fairly reflecting, in reasonable detail, the transactions and dispositions of the assets of ARCP, in violation of Title 15, United States Code, Sections 78m(b)(2)(A) and (5), and 78ff, and Title 17, Code of Federal Regulations, Section 240.13b2-1.

## Overt Acts

30.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about July 28, 2014, while in New York, New York, BRIAN BLOCK, the defendant, emailed to McAlister and CC-1 a spreadsheet entitled: "Q2 2014 AFFO recast."

b.   On or about July 29, 2014, CC-1, while in New York, New York, sent BLOCK and McAlister an email with the subject: "AFFO for your review."

c.   On or about July 29, 2014, CC-1, while in New York, New York, caused a "blackline" of a draft Form 10-Q filing for ARCP to be emailed to various parties.

d.   On or about July 29, 2014, BLOCK and others caused ARCP to file a Form 10-Q with the SEC.

- 16 -

e.    On or about July 29, 2014, BLOCK and others
caused ARCP to file a Form 8-K with the SEC.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

31.    The allegations contained in paragraphs 1 through 25
and paragraph 30 are repeated and realleged as if fully set
forth herein.

32.    Between in or about July 2014 and in or about August
2014, in the Southern District of New York and elsewhere, BRIAN
BLOCK, the defendant, willfully and knowingly, directly and
indirectly, by use of the means and instrumentalities of
interstate commerce, and of the mails and the facilities of
national securities exchanges, in connection with the purchase
and sale of securities, used and employed manipulative and
deceptive devices and contrivances, in violation of Title 17,
Code of Federal Regulations, Section 240.10b-5, by: (a)
employing devices, schemes, and artifices to defraud; (b)
engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon persons;
and (c) making untrue statements of material fact and omitting
to state material facts necessary in order to make the
statements made, in the light of the circumstances under which

they were made, not misleading, to wit, BLOCK engaged in a

scheme with others to mislead the shareholders of ARCP and the

investing public by fraudulently inflating the reported figures

for AFFO and AFFO per share for the second quarter of 2014 and

the first six months of 2014, as reported in ARCP's Second

Quarter 10-Q and in the Form 8-K attaching the Second Quarter

Press Release.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17,
Code of Federal Regulations, Section 240.10b-5; and Title 18,
United States Code, Section 2.)

### COUNT THREE
### (False Statements in Filings with the SEC)

The Grand Jury further charges:

33.    The allegations contained in paragraphs 1 through 25

and paragraph 30 are repeated and realleged as if fully set

forth herein.

34.    On or about July 29, 2014, in the Southern District of

New York and elsewhere, BRIAN BLOCK, the defendant, willfully

and knowingly made and caused to be made statements in reports

and documents required to be filed with the SEC under the

Securities Exchange Act of 1934 and the rules and regulations

promulgated thereunder, which statements were false and

misleading with respect to material facts, to wit, BLOCK caused

to be submitted to the SEC the Second Quarter 10-Q for ARCP

which omitted materials facts and contained materially

- 18 -

misleading statements.

(Title 15, United States Code, Sections 78m(a) and 78ff; Title
17, Code of Federal Regulations, Sections 240.12b-20 and
240.13a-13; and Title 18, United States Code,
Section 2.)

## COUNT FOUR
### (False Statements in Filings with the SEC)

The Grand Jury further charges:

35.  The allegations contained in paragraphs 1 through 25
and paragraph 30 are repeated and realleged as if fully set
forth herein.

36.  On or about July 29, 2014, in the Southern District of
New York and elsewhere, BRIAN BLOCK, the defendant, willfully
and knowingly made and caused to be made statements in reports
and documents required to be filed with the SEC under the
Securities Exchange Act of 1934 and the rules and regulations
promulgated thereunder, which statements were false and
misleading with respect to material facts, to wit, in connection
with the filing of ARCP's Second Quarter 10-Q, BLOCK caused to
be submitted to the SEC a Form 8-K attaching a press release
reporting ARCP's financial results for the three- and six-month
periods ending June 30, 2014, which omitted materials facts and
contained materially misleading statements.

(Title 15, United States Code, Sections 78m(a) and 78ff; Title
17, Code of Federal Regulations, Sections 240.12b-20 and
240.13a-11; and Title 18, United States Code,
Section 2.)

- 19 -

## COUNT FIVE
### (False Certification of Disclosure Filed with the SEC)

The Grand Jury further charges:

37. The allegations contained in paragraphs 1 through 25 and paragraph 30 are repeated and realleged as if fully set forth herein.

38. On or about July 29, 2014, in the Southern District of New York and elsewhere, BRIAN BLOCK, the defendant, knowingly and willfully certified in a written statement accompanying a periodic report containing financial statements filed by an issuer with the SEC pursuant to section 13(a) and 15(d) of the Securities Exchange Act of 1934, to wit, ARCP's Second Quarter 10-Q, that, inter alia, BLOCK had disclosed to ARCP's auditor and the audit committee of ARCP's board of directors any fraud, whether or not material, that involved management or other employees who had a significant role in ARCP's internal control over financial reporting despite the fact that BLOCK knew that those representations, among others, were false and misleading.

(Title 15, United States Code, Sections 78m(a) and 78ff; Title 17, Code of Federal Regulations, Section 240.13a-14; and Title 18, United States Code, Section 2.)

## COUNT SIX
### (False Section 1350 Certification Filed with the SEC)

The Grand Jury further charges:

39.   The allegations contained in paragraphs 1 through 25 and paragraph 30 are repeated and realleged as if fully set forth herein.

40.   On or about July 29, 2014, in the Southern District of New York and elsewhere, BRIAN BLOCK, the defendant, knowingly and willfully certified in a written statement accompanying a periodic report containing financial statements filed by an issuer with the SEC pursuant to section 13(a) and 15(d) of the Securities Exchange Act of 1934, to wit, ARCP's Second Quarter 10-Q, that information contained in the Second Quarter 10-Q fully complied with the requirements of section 13(a) and 15(d) of the Securities Exchange Act of 1934 and fairly presented, in all material respects, the financial condition and results of operations of the issuer, despite knowing that the Second Quarter 10-Q included fraudulently inflated AFFO figures for the second quarter of 2014 and the first six months of 2014.

(Title 18, United States Code, Sections 1350(c)(1) and (c)(2) and 2.)

## FORFEITURE ALLEGATION WITH RESPECT
## TO COUNTS ONE THROUGH FOUR

41.    As the result of committing one or more of the offenses charged in Counts One through Four of this Indictment, BRIAN BLOCK, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of those offenses, and all property traceable to such property.

### Substitute Asset Provision

42.    If any of the above-described forfeitable property in Paragraph 41, as a result of any act or omission of the defendant,

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

- 22 -

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described above.

(Title 18, United States Code, Sections 981(a)(1)(C); Title 21,
United States Code, Section 853(p); and Title 28, United States
Code, Section 2461.)

GRAND JURY FOREPERSON

PREET BHARARA
United States Attorney

- 23 -

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

**- v. -**

**BRIAN BLOCK,**

**Defendant.**

---

**INDICTMENT**

16 Cr. ____ (  )

(Title 15, United States Code, Sections
78j(b), 78m(a) and 78ff; Title 17, Code
of Federal Regulations, Sections
240.10b-5, 240.12b-20, 240.13a-11,
240.13a-13, and 240.13a-14; Title 18,
United States Code, Sections 2, 371 and
1350.)



PREET BHARARA
U.S. Attorney.

---

Sept. 7, 2016
Filed Sealed Indictment.
Debra Freeman, U.S.M.J.